UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY L. FRENCH, | CASE NO. 1:10CV541 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION & ORDER** |
| Defendant. | |

Timothy J. French ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1.  For the following reasons, the Court REVERSES the Commissioner's decision and REMANDS the instant case for rehearing:

I.  **PROCEDURAL AND FACTUAL HISTORY**

On August 31, 2006, Plaintiff filed applications for SSI and DIB, alleging disability beginning July 1, 2006 due to left ear deafness and comprehension problems.  ECF Dkt. #15-6 at 2-9; ECF Dkt. #15-7 at 2-3.  The SSA denied Plaintiff's applications initially and on reconsideration.  ECF Dkt. #15-5 at 2-9.

On June 5, 2008, Plaintiff filed a request for an administrative hearing.  ECF Dkt. #15-5 at 16-23. On March 31, 2009, an ALJ conducted an administrative hearing via video where Plaintiff was represented by counsel.  ECF Dkt. #15-3 at 4.  At the hearing, the ALJ heard testimony from Plaintiff, witness Christie Bolander, and Ms. Skellen, a vocational expert ("VE").  *Id*.  On June 1, 2009, the ALJ issued a Notice of Decision - Unfavorable.  ECF Dkt. #15-2 at 9-22.  Plaintiff filed a request for review, which the Appeals Council denied.  *Id*. at 26-27.

On March 12, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On August 11, 2010, Plaintiff filed a brief on the merits. ECF Dkt. #16. On October 28, 2010, Defendant filed a brief on the merits. ECF Dkt. #19. On November 22, 2010, Plaintiff filed a reply brief. ECF Dkt. #22.

**II.**    **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from asymmetrical sensorineural hearing loss, left ear greater than right ear, and borderline intellectual functioning, both of which qualified as severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c). ECF Dkt. #15-2 at 14. The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. at 16.

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform all exertional levels of work, with limitations to simple, unskilled tasks and no exposure to loud, noisy environments. ECF Dkt. #15-2 at 18.

Based upon the VE's testimony and the RFC that he had determined, the ALJ found that Plaintiff could not perform his past relevant work as a molding machine operator/trimmer, but he could perform jobs existing in significant numbers in the national economy, such as a janitor/cleaner, laundry worker, or stock laborer. ECF Dkt. #15-2 at 20-21. The ALJ therefore determined that Plaintiff had not been under a disability as defined in the SSA and was therefore not entitled to DIB or SSI. *Id.* at 21.

**III.**    **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

**V.     ANALYSIS**

    **A.     Listing 12.05C**

Plaintiff first contends that the ALJ erred in finding that his impairments did not meet or equal Listing 12.05C.  ECF Dkt. #16 at 2, 9-14.

In the third step of the analysis to determine a claimant's entitlement to SSI or DIB, it is the claimant's burden to bring forth evidence to establish that his impairment meets or is medically equivalent to a listed impairment.  *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).  In order to meet a listed impairment, the claimant must show that his impairment meets all of the requirements for a listed impairment.  *Hale v. Sec'y,* 816 F.2d 1078, 1083 (6th Cir. 1987); 20 C.F.R. § 404.1525(d).  An impairment that meets only some of the medical criteria does not qualify, despite its severity.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Listing 12.05C requires a claimant to meet three requirements in order to establish a disability: (1) he must satisfy the introductory paragraph of Listing 12.05, which requires the showing of significantly subaverage general intellectual functioning with deficits in adaptive functioning that had initially manifested prior to the age of 22; (2) he must establish that he meets the first requirement of 12.05C by showing that he has a valid verbal, performance, or full-scale IQ of 60 through 70; and (3) he must establish that he meets the second requirement of 12.05C by showing he has a physical or mental impairment, other than the mental retardation impairment, that imposes an additional and significant work-related limitation of function.  20 C.F.R. Pt. 404, Subpt. P, App.1, Listings 12.00A, 12.05, 12.05C; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The parties both present arguments as to whether an actual diagnosis of mental retardation is necessary in order meet Listing 12.05C.  Defendant appears to contend that an actual diagnosis of mental retardation is required in order to satisfy the Listing.  ECF Dkt. #19 at 10 ("[t]his is not a proper challenge because, as explained above, an actual diagnosis of retardation must exist prior to a finding of listing level mental retardation.").  Plaintiff disputes that an actual diagnosis is necessary.  The Court agrees with Plaintiff and finds that an actual diagnosis of mental retardation is not required in order to satisfy Listing 12.05C.

Recently, Judge O'Malley considered the issue of whether an ALJ's reliance on a diagnosis of borderline intellectual functioning constitutes substantial evidence in support of a finding that the introductory paragraph of Listing 12.05 has not been satisfied. *See Thomas v. Comm'r of Soc. Sec.*, No. 08CV1365, 2010 WL 1254788 (N.D. Ohio Mar. 25, 2010), at *8-*12. In *Thomas*, the Court held that a claimant is not required to present a diagnosis of mental retardation in order to satisfy Listing 12.05C, but he must presently suffer actual mental retardation in order to satisfy the threshold requirement of the introductory paragraph. *Id*. at *10 ("the flaw in Thomas' argument is that he ignores the threshold requirement of Listing 12.05-a finding that he presently suffers actual mental retardation."). The *Thomas* Court pointed to *Cooper*, where the Sixth Circuit Court of Appeals held that "it is not enough for a claimant to point to one IQ score below 71; the claimant must also satisfy the 'diagnostic description' of mental retardation in Listing 12.05." *Id*. quoting *Cooper v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 450, 452 (6th Cir. 2007). The *Cooper* Court reasoned that no psychologist had diagnosed the claimant with mental retardation, and the examiner and clinical psychologist who tested him advanced a diagnosis of borderline intellectual functioning. *Id.* The *Thomas* Court made clear that a diagnosis is not necessary to prove mental retardation, but some evidence is required. *Thomas*, 2010 WL 1254788 at *11. Specifically, the *Thomas* Court noted that "[t]here is. . . ample Sixth Circuit authority for the proposition . . . that a clinical psychologist's diagnosis of the claimant as outside the definition of 'mental retardation' is an important factor for the ALJ to consider in determining whether the claimant satisfies the introductory paragraph of Listing 12.05(C)." *Id*. (collecting cases). In fact, "significant reliance on a diagnosis of something other than 'mental retardation,' such as 'borderline intellectual functioning,' is particularly sensible in light of the fact that the diagnostic description of mental retardation in the introductory paragraph of Listing 12.05 tracks the DSM-IV." *Id*.

Here, the ALJ found that Plaintiff had the impairment of borderline intellectual functioning and not mental retardation. ECF Dkt. #15-2 at 14. He reviewed the psychological testing report and letters from Dr. Brinkerhoff, the psychologist who administered the Wechsler Adult Intelligence Test-Third Edition ("WAIS-III") on November 1, 2006 at the request of a representative from Richland Job and Family Services. ECF Dkt. #15-12 at 17. The WAIS-III showed that Plaintiff had

-5-

a verbal IQ of 62-72, which is in the extremely low to borderline range, a performance scale IQ of 65-69, a full scale IQ of 62-70, in the extremely low to borderline range. *Id.* However, Dr. Brinkerhoff indicated in his testing report that he was making a diagnostic impression only, and not a diagnosis, "as adaptive behavioral functioning scales" were unavailable. ECF Dkt. #15-12 at 18. Dr. Brinkerhoff also indicated in a January 13, 2009 letter that a definitive diagnosis or other conclusive opinion was inappropriate based upon the 2006 test scores because he had concerns regarding possible factors that may have adversely impacted Plaintiff's performance on the IQ tests, including frustration, fatigue, reported stiffness from Plaintiff's history of manual labor, or other unrecognized emotional factors. *Id.*; ECF Dkt. #15-12 at 19.

The ALJ also reviewed the consultative examination report by Dr. Schonberg, who administered the WAIS-III on November 2, 2006 at the request of the agency, and reported a verbal IQ score of 66, a performance IQ score of 70 and a full-scale IQ score of 65 for Plaintiff. ECF Dkt. #15-11 at 7. Dr. Schonberg opined that even though Plaintiff's IQ scores placed him in the mildly retarded range, he would not meet the criteria for a diagnosis of mild mental retardation because although he repeated the fifth grade and took special classes at school, he did graduate and he held several factory jobs, one for as long as seven years. *Id.* at 8. Dr. Schonberg diagnosed Plaintiff under the DSM-IV with borderline intellectual functioning and opined that Plaintiff's mental abilities were not impaired in relating to others or to understanding, remembering and following directions, while his mental abilities to maintain attention, concentration, persistence and pace, and to withstand the stress and pressures of daily work activities were moderately impaired. *Id.* at 8-9. Dr. Schonberg opined that Plaintiff had the mental ability to perform simple, repetitive work tasks. *Id.* at 9. Accordingly, while an actual diagnosis of mental retardation is not necessary in order to satisfy Listing 12.05C, the ALJ properly considered the fact that Plaintiff had a diagnosis of borderline intellectual functioning in determining whether he satisfied the introductory paragraph of Listing 12.05C.

Plaintiff also asserts that the ALJ conducted virtually no analysis in stating that he lacked a "valid, verbal, performance, or full scale IQ of 60 through 70" when no psychologist questioned

-6-

the validity of two IQ tests showing similar applicable scores. ECF Dkt. #16 at 10. Contrary to Plaintiff's first assertion, it does not appear that the ALJ invalidated Plaintiff's IQ scores. *See* ECF Dkt. #16 at 10. Reading the sentence in which the ALJ specifically addressed Listing 12.05C in isolation, one may at first reading believe that the ALJ found Plaintiff's IQ scores invalid. ECF Dkt. #15-2 at 17 ("In terms of the requirements in paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."). However, the ALJ's statement is merely a recitation of the Listing's requirement itself, which conjunctively requires both the full scale IQ of 60 through 70 and another impairment imposing an additional and significant work-related functional limitation.

Reviewing the entire section of the ALJ's Step Three analysis as to whether Plaintiff's impairments met or equaled a Listing, the Court finds that the ALJ did not invalidate the IQ test scores of Plaintiff. At the end of his Step Three analysis section, the ALJ concludes:

> [a]fter careful review of the record, it is concluded that while the claimant has low IQ scores, the record fails to support a conclusion that he has demonstrated a lack of adaptive functioning that manifested itself prior to age 22. He has had a relatively good work history and is able to live independently. In fact he was apparently charged with caring for his mother, who at one time, required the use of a feeding tube. Additionally, while the claimant has some impaired hearing ability, he apparently declines more than occasional use of hearing aides. During the VTC hearing, he was able to hear adequately and to fully testify and participate.

ECF Dkt. #15-2 at 18. Thus, the ALJ acknowledged that Plaintiff had low IQ test scores. Further, the ALJ cited to those test scores in another section of his decision and did not state that they were invalid. ECF Dkt. #15-2 at 14-15. Accordingly, it appears that the ALJ found that Plaintiff's impairment did not meet or equal Listing 12.05C because he failed to show that he demonstrated a lack of adaptive functioning that manifested itself prior to age 22 rather than because he lacked IQ scores in the necessary range.

Plaintiff also asserts that he demonstrated deficits in his adaptive functioning which met the third prong of Listing 12.05C and the ALJ's analysis of this prong was limited. ECF Dkt. #16 at 11. Plaintiff first points out that intellectual testing in November 2006 by Dr. Schonberg showed that

-7-

he had academic deficits as he had a 2.6 grade level reading comprehension level and a 4.0 grade level in math skills. ECF Dkt. #16 at 12. Plaintiff contends that the ALJ failed to find that he had clearly demonstrated deficits in academic skills. *Id*.

The ALJ acknowledged Plaintiff's reading and math levels in his decision, despite the fact that these levels were tested and recorded years after his developmental period. ECF Dkt. #15-2 at 15; *see Foster v. Halter*, 279 F.3d 348, 354-355 (6th Cir. 2001)(substantial evidence supports the ALJ's determination that Foster does not meet the listing for mental retardation as "Foster has failed to show that her general intellectual functioning was "significantly subaverage" prior to that age [22]. None of her testing or evaluation was contemporaneous with her developmental period; she was already 42 years of age when the first testing was performed in 1997."). The ALJ noted that despite Plaintiff's low IQ scores and his reading and math levels, Dr. Schonberg nevertheless diagnosed Plaintiff with borderline intellectual functioning and opined that Plaintiff would not meet the criteria for a mild mental retardation diagnosis because of his employment history and his graduation from high school. *Id*. Dr. Schonberg had opined that since Plaintiff was able to hold several factory jobs for as long as seven years and had graduated from high school, he would not meet the criteria for a mental retardation diagnosis despite his low IQ scores, low reading and math levels, and his attendance of special education classes and repeating of the fifth grade. ECF Dkt. #15-11 at 8.  Plaintiff asserts that the ALJ overstated his occupational abilities by finding that he had a "relatively good work history." ECF Dkt. #16 at 12. He also questions Dr. Schonberg's opinion that his adaptive skills were in the borderline range because he held several factory jobs for as long as seven years. *Id*. Plaintiff calls attention to the fact that he was able to maintain a job with Crane Plumbing for nearly seven years only because he was friends with the plant manager who made sure that an extra person worked with Plaintiff to help him. *Id*. Plaintiff also points to the fact that his only other work experience was through temporary agencies, where he would work for two to three months at a time, but then would be told that he was no longer needed due to a lack of work. *Id.* at 13. Plaintiff also cites the testimony of the mother of his child, who frequently worked temporary job assignments with him, and testified that she would do most of the work as Plaintiff could never catch on to the work and was too slow. *Id.*

-8-

In *Hayes v. Commissioner of Social Security*, the Sixth Circuit Court of Appeals described the adaptive skills portion of Listing 12.05C:

> The adaptive skills prong evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills. *Heller v. Doe*, 509 U.S. 312, 329, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 28-29 (3d rev. ed. 1987) ("DSM-III")). To determine the definition of mental retardation under the SSA, it is appropriate to consult leading professional organizations' definitions. *See* 67 Fed.Reg. 20022 (2002). The American Psychiatric Association defines adaptive-skills limitations as "[c]oncurrent deficits or impairments ... in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." DSM-IV-TR at 49Adaptive functioning refers to social skills, communication, and daily living skills. *Turner v. Comm'r of Soc. Sec.*, No. 09-5543, 2010 WL 2294531, at *4 (6th Cir. June 7, 2010), unpublished.

No. 09-5409, 357 Fed. App'x 672, 2009 WL 4906909, at **5 (6th Cir. Dec. 18, 2009), unpublished. The *Hayes* Court found that even with additional testing that the claimant requested, she would not be able to meet Listing 12.05C because the record showed that her adaptive skills were not deficient as she cared for herself and her husband, cooked, washed clothes, shopped, managed her finances and used public transportation. *Id.*

In the instant case, the ALJ considered Plaintiff's work history and the testimony that he had to have someone work with him while he was employed for seven years at Crane Plumbing. ECF Dkt. #15-2 at 18-19; ECF Dkt. #15-2 at 20. However, the ALJ nevertheless found that Plaintiff had a good work history based upon his seven-year employment with Crane Plumbing and his frequent temporary jobs. *Id*. at 19-20. The ALJ further noted that Plaintiff had a driver's license, was able to cook, clean, grocery shop, and care for his six year-old son and his ill mother, who until recently required the use of a feeding tube. ECF Dkt. #15-2 at 19-20. Plaintiff had reported to Dr. Schonberg that he was let go from his last job in July 2006 and a prior job because he missed work due to his sick mother. ECF Dkt. #15-11 at 5. In addition to Plaintiff's work and academic history, the ALJ also reviewed the psychological testing report and letters from Dr. Brinkerhoff who stated a diagnostic impression of "mild mental retardation - borderline intellectual functioning, but cautioned that this was an impression only, and not a diagnosis, "as adaptive behavioral functioning scales" were unavailable. ECF Dkt. #15-12 at 18. Dr. Brinkerhoff also indicated in a January 13,

2009 letter that he offered no diagnosis or conclusive opinion from the 2006 test scores because he believed that other factors may have adversely impacted Plaintiff's performance on the IQ tests, including frustration, fatigue, reported stiffness from Plaintiff's history of manual labor, or other unrecognized emotional factors. *Id.*; ECF Dkt. #15-12 at 19.

The ALJ also reviewed the consultative examination report by Dr. Schonberg from November 2, 2006, who opined that Plaintiff would not meet the criteria for a diagnosis of mild mental retardation because although he repeated the fifth grade and took special classes at school, he did graduate and he held several factory jobs, one for as long as seven years. ECF Dkt. #15-11 at 8. Dr. Schonberg diagnosed Plaintiff under the DSM-IV with borderline intellectual functioning and opined that Plaintiff had no impairment in his mental abilities to relate to others and to understand, remember and follow directions did not seem to be impaired, while his mental abilities to maintain attention, concentration, persistence and pace, and to withstand the stress and pressures of daily work activities seemed to be moderately impaired. *Id.* at 8-9. Dr. Schonberg opined that Plaintiff had the mental ability to perform simple, repetitive work tasks. *Id.* at 9.

Thus, while Plaintiff did have IQ scores in the requisite range of Listing 12.05C, substantial evidence supports the ALJ's finding that Plaintiff failed to meet the adaptive skills prong.

Since the Court has found that substantial evidence supports the ALJ's determination that Plaintiff's impairment did not satisfy the introductory paragraph of Listing 12.05, the Court need not address Plaintiff's assertion that he had another impairment that imposed significant and additional work-related restrictions in order to meet Listing 12.5C.

### **B.** **RFC**

Plaintiff also asserts that substantial evidence does not support the ALJ's determination of his RFC. ECF Dkt. #16 at 14. Plaintiff contends that the ALJ failed to state the weight that he gave to the opinion of state reviewing psychologist Dr. Pawlarczyk's. *Id.* On November 13, 2006, Dr. Pawlarczyk reviewed Plaintiff's records and completed a mental RFC assessment and psychiatric review technique form. ECF Dkt. #15-11 at 13-30. Dr. Pawlarczyk found that Plaintiff was markedly limited in understanding, remembering and executing detailed instructions, and

moderately limited in: maintaining concentration and attention for extended periods; performing activities within a schedule, maintaining regular attendance and being punctual; completing a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to respond appropriately to changes in the work setting. *Id*. at 13-14. Dr. Pawlarczyk relied upon Dr. Schonberg's consultative examination findings in concluding that Plaintiff could perform jobs requiring simple, repetitive tasks. *Id*. at 15. Dr. Pawlarczyk also concluded that jobs consisting of simple, repetitive tasks should also not include any strict production quotas. *Id*.

The ALJ reviewed Dr. Pawlarczyk's assessment, and mentioned Dr. Pawlarczyk's findings of moderate impairments in withstanding stress and maintaining attention and concentration in competitive work. ECF Dkt. #15-2 at 17. The ALJ also cited to Dr. Pawlarczyk's opinion that Plaintiff could perform simple, repetitive unskilled tasks that do not include strict production quotas. *Id*. The ALJ found that Plaintiff had moderate difficulties in concentration, persistence and pace. *Id*. However, he did not place any restrictions on Plaintiff's mental abilities beyond the limitation to simple, unskilled work not requiring more than a third grade reading level or fourth grade math level. *Id.* at 18. The ALJ also reviewed Dr. Schonberg's findings and opinion, in which Dr. Schonberg found Plaintiff's attention, concentration as moderately impaired and Plaintiff's pace and persistence as below average. *Id.* at 15. The ALJ noted Dr. Schonberg's opinion that Plaintiff could perform simple, repetitive work tasks. *Id*. at 16.

The ALJ did not state the weight that he attributed to Dr. Pawlarczyk's opinion. In fact, the ALJ in this case did not state the weight that he attributed to any of the examining and consulting sources. It is true that evidence from non-examining sources is considered opinion evidence. 20 C.F.R. § 404.1527(f). The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. §

-11-

404.1527(f)(2)(ii). SSR 96-6p requires the ALJ to consider the opinions of state agency physicians and to explain the weight given to those opinions. SSR 96-6p.

However, the Sixth Circuit Court of Appeals has held that the regulation requiring an ALJ to give good reasons for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of several examining physicians' opinions over others. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, at **10 (6th Cir. Feb. 9, 2006), unpublished. The *Kornecky* Court found that:

> While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each medical opinion, it is well settled that:
>
>> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id.*

In this case, the ALJ's review of the record, including Plaintiff's prior work history, ability to care for his minor son and ill mother, and the medical findings, provide adequate explanation for his finding that Plaintiff's impairment does not satisfy Listing 12.05C. However, the ALJ offers no explanation as to why he failed to include the repetitive work restriction opined by both Dr. Pawlarczyk and Dr. Schonberg or why he failed to impose a pace and production limitation of which both of these medical professionals raised concerns.

Since the ALJ provided no meaningful analysis regarding his rejection of these restrictions, the Court finds that remand of the instant case is necessary. *See Bates v. Comm'r of Soc. Sec.*, 2010 WL 5698449, at *11 (remand required where ALJ's decision contained no explanation why he apparently rejected a restriction to simple tasks opined by two non-treating psychologists, the only two opinions in the record).

## **VI.** **CONCLUSION**

For the foregoing reasons, the Court REVERSES the Commissioner's decision and REMANDS this case for further factfinding, analysis, and articulation by the ALJ pertaining to Dr. Pawlarczyk and Dr. Schonberg's restriction to repetitive work and Plaintiff's limited ability to perform at an adequate pace with adequate persistence.


DATE: July 19, 2011    */s/George J. Limbert*
                                           GEORGE J. LIMBERT
                                           UNITED STATES MAGISTRATE JUDGE